## DAVIS *vs.* DAVIS.

1. Bills must be signed *by* counsel. Signing the name of counsel is not a compliance with the rule, either in spirit or letter.

2. A mere allegation that the husband does not "provide his wife with support," will not entitle her to relief under the tenth section of the divorce act.

3. Threats of extreme cruelty never executed, petty tyranny, and constant alarms by a husband, will not, of themselves, necessarily call for the interference of the court by divorce *a mensa et thoro.* Whether they amount to extreme cruelty depends upon attending circumstances.

Davis *v.* Davis.

This cause was submitted on the pleadings and proofs, no counsel being employed on either side.

THE CHANCELLOR.

No relief could be given in this cause, if the complainant was entitled to relief, as the bill lacks the important sanction expressly required by the rules of this court; it is not signed by counsel. The solicitor, having first signed his own name as solicitor and counsel, afterwards, upon discovery of the mistake, but at what stage of the cause does not appear, signed, in his own handwriting, the name of a counselor-at-law to the bill. He—it is presumed by accident—selected the name of the counsel who either before or afterwards signed the answer of the defendant. Whether the name of this counsel was so signed to this bill with his assent or not, is immaterial; the words of the rule, and the object and spirit of the rule, require that the bill should be signed *by counsel*—not with the name of counsel. Counsel, before annexing his name to a bill, should have perused it, or been informed of its contents in such manner as would satisfy him that he might certify that the bill stated a case on which the complainant might be entitled to relief, set forth with so much regard to the essential rules of pleading, and praying relief in such manner, as to entitle it to the consideration of the court.

This bill is so defective and inartistically drawn that, although it is possible to suppose that the solicitor who put his name to it may have read it first, it is not easy to conceive that any respectable counsel would have signed it after perusal. It contains no prayer for any special relief, except that the defendant may set forth and discover whether the complainant is not entitled to maintenance, separate from him, out of his estate, and adds the usual general prayer for other relief. There is nothing whatever in it to show what relief the complainant or her counsel desires or supposes that she is entitled to.

The bill states some acts of cruelty, but does not characterize them as extreme cruelty, so as to lay the foundation for a divorce *a mensa et thoro*, although one or two of these acts, if fully proved, are such as, under certain circumstances not here set forth, the court might adjudge to be the extreme cruelty that would warrant such divorce. It alleges that the defendant did not provide her with support, but does not allege any voluntary abandonment, such as might entitle her to relief under the tenth section of the divorce act.

Three distinct matters are alleged as acts of cruelty: One, a threat that, while " he would take care to keep clear of the law, he would devil her to death, if he could not do anything else." The mere threat, if not attempted to be executed, which is not alleged, is not, as between these parties, such extreme cruelty as would warrant a divorce. The second matter is, that he placed a gun by the head of his bed, with which she believed he intended to kill her and her two children by her former husband; and, upon her remonstrating with him, he said that " were it not for the law, he would have killed her and her children, only he knew he would be hung if he killed them." Such language might in some cases be extreme cruelty. But if a wife, without reason or provocation, charged a husband, who from habit or other cause placed his gun by the head of his bed, with an intent to murder her and her children, as from the narration would seem to be the case here, his answer, as set out in the bill, might be well accounted for, without a charge of extreme cruelty. The third matter is, that having taken a malicious hatred towards her and her two children, without any just cause, he did, by his constant cruelty to them, " frighten them continually, until they were in danger of their lives." Comment on this is unnecessary. The bill also states, generally, that he once refused her money to buy a loaf of bread, permitted her to work night and day with her needle, to dress herself and her children, and tortured her by petty cruelty and open attacks, till further endurance became impossible.

But if the bill had been signed by counsel, and had set forth facts such as would show the complainant entitled to some relief, yet the proof is not such as would warrant the interference of the court, either for divorce *a mensa et thoro*, or for alimony on the ground of abandonment.

The proof clearly shows that the defendant did not abandon her, but that she deserted him, against his advice and remonstrances. The only acts of cruelty alleged that could warrant a separation, are denied by him in his answer, and not sufficiently proved by two witnesses, or anything equivalent to them, to overcome the effect of the answer; on the contrary, the effect produced on my mind by the whole mass of contradictory testimony is, that in the many difficulties and contentions between them in their married life, the wife was much more to blame than the husband. Perverseness, sullenness, silence, and tears, obstinately and wilfully persevered in for weeks and months, for the purpose of provocation and annoyance, are greater violations of marital duties, and more clearly acts of extreme cruelty, than harsh and low epithets, not unusual in their station in life, uttered by a husband under the excitement of passion, even if accompanied by swearing and very improper profanity. The offence, especially where the wife indulges in like language, is against good morals and religion, and not against conjugal duties.

The bill must be dismissed.